```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
LARRY POUNCY,                                                           :
                                                                        :
                                Plaintiff,                              :     15-CV-6260 (JMF)
                                                                        :
                -v-                                                     :     OPINION AND ORDER
                                                                        :
ADVANCED FOCUS LLC, et al.,                                             :
                                                                        :
                                Defendants.                             :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/25/2017

JESSE M. FURMAN, United States District Judge:

      Plaintiff Larry Pouncy, proceeding *pro se*, brings employment discrimination claims against his former employer, Advanced Focus LLC ("Advanced Focus"), and former colleagues Todd Biederman, Brad Solomon, and Sara Solomon-White. In particular, Pouncy alleges claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; the Equal Pay Act (the "EPA"), 29 U.S.C. § 206(d); and the New York Labor Law, as well as a state-law claim for intentional infliction of emotional distress. Defendants and Pouncy now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Pouncy's claims. For the reasons discussed below, Defendants' motion is GRANTED, Pouncy's motion is DENIED, and the case is dismissed.

## BACKGROUND

The relevant facts, taken from the Amended Complaint and admissible materials submitted in connection with the pending motions, are either undisputed or described in the light most favorable to Pouncy. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Advanced Focus is a New York-based company that assembles focus groups to conduct market research for clients. (Docket No. 79 ¶¶ 1-3, 6, 15). Advanced Focus employs recruiters, who call potential focus group members, and project directors (or assistant project directors), who supervise the recruiters and contribute to business development efforts. (Docket No. 82 ("Solomon Decl.") ¶¶ 8, 15; Docket No. 108 ("Supp. Solomon Decl."), ¶¶ 2-3). As a general matter, recruiters read prepared scripts over the telephone to potential focus group members. (Supp. Solomon Decl. ¶ 3). Some recruiters at the company are "on-call recruiters," meaning that they work as needed — that is, they are not guaranteed work hours. (*Id.* ¶ 8). A committee at Advanced Focus assigns on-call recruiters to available projects; if there are no projects in need of staffing, an on-call recruiter will not be called to work. (*Id.* ¶¶ 6, 8).

Pouncy started working as an on-call recruiter at Advanced Focus in June 2011. (Docket No. 101 ("Pl.'s SOF") ¶ 54). At the outset, he earned a base wage of eight dollars per hour, but he was also eligible to earn commissions. (Solomon Decl. ¶ 4). At the end of each bi-monthly pay cycle, Pouncy's earnings were the greater of either his hourly wages or his commissions. (*Id.* ¶ 6). Not all recruiters were paid under this structure: Other recruiters were paid a higher hourly wage (with no commissions), and at least one recruiter was a salaried employee. (*Id.* ¶¶ 13, 18-19). During his time as a recruiter, Pouncy tried repeatedly, without success, to get promoted to the position of project director. (Docket No. 85 ("Winfield Decl.") ¶ 4). Between June 2011 and November 2014, when Pouncy's employment at Advanced Focus ended, the

company filled several project director and assistant project director positions, either by promoting recruiters from within or by hiring outsiders. (Solomon Decl. ¶¶ 10-12, 15-17).

On November 18, 2014, Pouncy met with Todd Biederman, the Chief Executive Officer of Advanced Focus. (Docket No. 84 ("Biederman Decl.") ¶ 2). Pouncy raised concerns about the structure of his compensation and the method by which the company was calculating his commissions. He also complained about his lack of promotion. At the end of the conversation, Biederman told Pouncy that he was "dismissed," (*id.* ¶ 6; Docket No. 81 ("Roth Decl."), Ex. A ("Pl. Tr."), at 169), and Pouncy left work. Three days later, Pouncy e-mailed one of his supervisors, requesting a "letter of termination and final paycheck" and claiming that Biederman had retaliated against him for engaging in legally protected activity. (Biederman Decl. Ex. A). Biederman then e-mailed Pouncy: "Who said you were terminated, prior to our conversation you were observed packing up all your personal belongings." (Biederman Decl. Ex. B). Pouncy did not respond, and filed this action on August 7, 2015. (*See* Docket No. 2).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment

must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Finally, it is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

## DISCUSSION

Construed liberally, Pouncy's Complaint alleges (1) claims of discrimination and hostile work environment under Title VII and the NYCHRL; (2) retaliation claims under Title VII and the NYCHRL; (3) a state-law claim for intentional infliction of emotional distress; (4) a claim under the EPA; and (5) a claim under the New York Labor Law. The Court will address each of set of these claims in turn.

**A. Race Discrimination Claims**

Pouncy's race discrimination claims under Title VII, Section 1981, and the NYCHRL are analyzed under the three-step burden-shifting scheme articulated by the Supreme Court in

5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2016). Under that scheme, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. A plaintiff does so "when he establishes: (1) that he belonged to a protected class; (2) that he was qualified for the position he sought; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014). If the plaintiff establishes a *prima facie* case, the burden then "shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks omitted). If the defendant carries that burden, the plaintiff "may no longer rely on the presumption raised by the prima facie case," but rather must put forward evidence that would allow a reasonable jury to conclude that "the employer's determination was in fact the result of racial discrimination." *Id*.

Significantly, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). That is, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (alterations in original) (internal quotation marks omitted). "Evidence 'contradicting the employer's given reason — without more — does not necessarily give logical support to an inference of discrimination,' and is therefore insufficient to satisfy

plaintiff's burden." *Sosa v. Rockland Cty. Cmty. Coll.*, No. 15-CV-3329 (JCM), 2017 WL 3105872, at *5 (S.D.N.Y. July 20, 2017) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). Courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff*, 196 F.3d at 448. "[A]n inference," the Second Circuit has noted, "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Id.* (internal quotation marks and alteration omitted).

1. **Denial of Promotions**

Pouncy's first claim of discrimination arises from Advanced Focus's denial of his requests for promotion from recruiter to project director. Whether Pouncy has established a *prima facie* case of discrimination on that front is a close question, but the Court need not answer it because Pouncy's claim fails at the third stage of the *McDonnell Douglas* inquiry regardless. For starters, Defendants indisputably offer legitimate, non-discriminatory reasons for denying Pouncy's requests for promotion — namely, that Pouncy was not as strong a candidate as other recruiters who were promoted. Among other things, Defendants point to (1) the fact that Pouncy's writings — including his submissions to this Court — are "riddled with spelling, grammatical, and syntax errors" (Docket No. 88 ("Defs.' Mem."), at 12; *see* Solomon Decl. Ex. C); (2) the fact that he got into multiple altercations with co-workers and made errors at work that he blamed on others (*see* Defs.' Mem. 12; *see also* Solomon Decl. ¶¶ 21-22); and (3) the fact that he received evaluations from supervisors (including two African-American supervisors) stating that he was not qualified for promotion. (Winfield Decl. ¶ 4; Docket No. 86 ¶¶ 3-4). Additionally, Defendants point to evidence that those who were promoted to project director

were substantially more qualified than Pouncy. One of Pouncy's colleagues, for example, was promoted from recruiter to project director because of her "good communication skills," and successful use of "different recruiting tools." (Solomon Decl. ¶ 10). Others were promoted because of their "excellent interpersonal and communication skills" and managerial backgrounds. (*Id.* at ¶¶ 11-12, 16-17).

Such evidence is plainly sufficient to satisfy Defendants' burden at the second step of the *McDonnell Douglas* inquiry. *See, e.g.*, *Estate of Hamilton v. City of N.Y.*, 627 F.3d 50, 55 (2d Cir. 2010) (per curiam) (finding the defendant's argument that "candidates who were promoted . . . had uniformly better performance evaluations than the plaintiffs" to be legitimate, non-discriminatory reasons); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 404 (S.D.N.Y. 2013) (finding that "defendants have offered a legitimate, nondiscriminatory reason" for their adverse employment action against the plaintiff, noting "plaintiff's history of performance problems . . . with respect to her writing skills and attention to detail"); *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 591 (S.D.N.Y. 2013) ("Poor work performance always constitute[s] [a] legitimate and nondiscriminatory reason[] for terminating employment . . . ." (first and second alterations in original) (citation and internal quotation marks omitted)). And Pouncy fails to carry his burden of showing that Defendants' reasons are false, let alone that "that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000). Notably, Pouncy conceded during his deposition that he did not know of any explicit evidence of discriminatory intent by Defendants. (Pl. Tr. 54-56). In fact, conclusory assertions and speculation aside, Pouncy presents no evidence from which a reasonable jury could infer discrimination, such as statistical disparities reflecting a preference for white employees. Indeed,

Pouncy himself acknowledged that two of the six employees hired or promoted to the position of project director during his employment at Advanced Focus were African-American. (Pl.'s SOF ¶ 21). In sum, there is insufficient evidence in the record to show that Defendants' explanations for Pouncy's lack of promotion were a mere pretext for race discrimination. Thus, his discriminatory termination claims under Title VII, Section 1981, and the NYCHRL must be and are dismissed.[1]

## 2. Pay Disparities

Pouncy's next race discrimination claim — based on the alleged disparities between his wages and the wages of some Caucasian counterparts — fails for similar reasons. Pouncy names three white, female recruiters — "Maisel, Trippet and Crichton" (Pl.'s SOF ¶ 26) — who were allegedly paid higher wages than he, but Defendants offer legitimate, non-discriminatory reasons for the disparities. *See, e.g.*, *Lioi v. N.Y.C. Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 583 (S.D.N.Y. 2012) (noting wage discrimination claims under Title VII and the NYCHRL are subject to the *McDonnell Douglas* framework). Trippet and Maisel, for example, both had over a decade of recruiting experience and were offered thirteen dollars per hour (without the opportunity to earn commissions) to match their previous wages. (Solomon Decl. ¶¶ 18-19). Crichton, meanwhile, had significant experience as a recruiter, and she "performed many duties beyond that of a recruiter, including corresponding with focus group participants and clients . . .

---

[1] The NYCHRL is more protective than Title VII, as courts must construe the local law "broadly" and "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of N.Y.*, 947 N.E.2d 135, 137 (N.Y. 2011); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013). Nevertheless, even under the NYCHRL's more liberal standards, Pouncy's failure-to-promote claim falls short as a matter of law, as a plaintiff must still "show[] that the conduct [complained of] is caused by a discriminatory motive." *Id.* at 110; *see also Stuart v. T–Mobile USA, Inc.*, No. 14-CV-4252 (JMF), 2015 WL 4760184, at *8 (S.D.N.Y. Aug. 12, 2015).

[and] routinely fill[ing] in for [her supervisor] as Project Director." (*Id.* ¶ 13). By contrast, Pouncy did not have any prior experience as a recruiter. (Solomon Decl. ¶ 4; *id.* Ex. C). These distinctions are plainly sufficient to satisfy Defendants' burden at this stage of the analysis. *See, e.g., Fayson v. Kaleida Health, Inc.*, 71 F. App'x 875, 876 (2d Cir. 2003) (summary order) (crediting an employer's justification for salary disparities where higher-paid employees "had held higher previous positions"). And once again, Pouncy points to no evidence from which a reasonable jury could find that "the defendant intentionally discriminated against the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Accordingly, Pouncy's wage disparity claims under Title VII and the NYCHRL must be and are dismissed.[2]

### 3. Hostile Work Environment

Finally, Pouncy brings a hostile work environment claim under Title VII, Section 1981, and the NYCHRL. To prevail on a hostile work environment claim under Title VII or Section 1981, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014) ("The same standards [as Title

---

[2] Separately, Pouncy argues that the wage disparities between him and these same three recruiters — Maisel, Trippet, and Crichton — violated the EPA. (*See* Docket No. 102 ("Pl.'s Mem."), at 17-19). But Pouncy's claim of gender discrimination is just as weak as his claim of race discrimination. Put simply, Pouncy offers no evidence to suggest that the pay disparities between him and the female recruiters were due to anything other than differing levels of experience and responsibilities. *See Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (holding that legitimate, nondiscriminatory reasons under the EPA include "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex" (quoting 29 U.S.C. § 206(d)(1)); *see also Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1075-76 (9th Cir. 1999) (crediting the employer's reliance on "different levels of experience" as a factor other than sex under the EPA).

VII] apply to the plaintiffs' hostile environment claims arising under . . . 42 U.S.C. § 1981."). Such a showing requires a plaintiff to identify incidents that are more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation mark omitted). Moreover, the incidents must show that the employer discriminated against the employee "because of [the employee's] race, color, religion, sex or national origin." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)); *see also Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999) ("[T]o sustain a Title VII hostile environment claim [the plaintiff] . . . must produce evidence that she was discriminated against *because of her race* . . . ." (emphasis added)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Here, even assuming *arguendo* that Pouncy has demonstrated that the environment at Advanced Focus was so "extraordinarily severe . . . to have altered the conditions of [his] working environment," *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), his hostile work environment claims under Title VII and Section 1981 must be dismissed because he fails to demonstrate that any of the alleged hostility was "because of" his race. Pouncy identifies seven incidents that, he alleges, add up to a claim of hostile work environment and asserts that they all took place "on account of [his] race." (Pl.'s SOF ¶ 56). But this conclusory and unsupported assertion aside, there is no evidence at all that any of the identified incidents took place because of Pouncy's race. *See, e.g.*, *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (summary order) ("A court must first ignore mere conclusory statements . . . ." (internal quotation marks omitted)). Nor does Pouncy attempt to argue with any particularity that the seven alleged incidents had any explicit or implicit racial motivation to them. *Cf. Goodwine v. City of N.Y.*,

11

No. 15-CV-2868 (JMF), 2016 WL 3017398, at *8 (S.D.N.Y. May 23, 2016) (dismissing a hostile work environment claim under Title VII because "there is nothing in the Complaint to suggest that [the alleged hostile activity] was based on Plaintiff's race or sex"). Thus, Pouncy's hostile work environment claims under Title VII and Section 1981 also fail.

Hostile work environment claims under the NYCHRL are analyzed "separately and independently from federal and state discrimination claims." *Mihalik*, 715 F.3d at 113. Most notably, the "severe or pervasive standard" that applies to the determination of liability under Title VII claims does not apply to the determination of liability under the NYCHRL (although it is relevant "to the scope of damages"). *Id.* Still, to prevail on a hostile work environment claim under the NYCHRL, a plaintiff must prove that the alleged misconduct was "caused at least in part by discriminatory or retaliatory motives." *Id.*; *see also Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454 (RA) (JLC), 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013) (noting that, even under the NYCHRL, a plaintiff must "plead facts tending to show that actions that created the hostile work environment were taken against him because of a prohibited factor" and that "the broader remediation available under the City law does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids"). For the reasons discussed above, Pouncy does not satisfy that requirement. That is, conclusory assertions aside, he fails to allege — let alone substantiate — that any of the relevant acts of hostility by his supervisors "were on the basis of . . . [a] protected characteristic." *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2015 WL 4605684, at *16 (S.D.N.Y. July 31, 2015). Because Pouncy does not meet his "burden of showing that the conduct is caused by a discriminatory motive," *Mihalik*, 715 F.3d at 110 (citation and internal quotation marks

omitted), the Court also grants summary judgment to Defendants on his NYCHRL hostile work environment claim.

## B. Retaliation Claims

Pouncy's next category of claims involves unlawful retaliation in violation of Title VII, Section 1981, and the NYCHRL. Pouncy's claims under all three statutes are also governed by the *McDonnell Douglas* burden-shifting framework. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) [he] engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Id.* (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)). The elements of a *prima facie* case of retaliation under the NYCHRL are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted). The second and third steps of the framework are identical to the steps discussed above. A plaintiff alleging retaliation in violation of Title VII, however, must show at the final step of the analysis that retaliation was a "but-for" cause of the adverse action, not simply a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526, 2533 (2013).

Pouncy's claims do not get out of the starting gate because he fails to show that he engaged in "protected activity." To satisfy the first element of the *prima facie* test, a plaintiff "need not establish that the employer's conduct being opposed was in fact prohibited

discrimination." *Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *26 (S.D.N.Y. Dec. 2, 2013), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015) (summary order). But he must prove that he possessed a good faith, objectively reasonable belief that the employment practice at issue was unlawful under the relevant statutes. *Id.*; *accord Kelly v. Howard I. Shapiro & Associates Consulting Eng'rs, P.C.,* 716 F.3d 10, 14-15 (2d Cir. 2013); *Orellana v. Reiss Wholesale Hardware Co.*, No. 14-CV-1913 (NGG) (LB), 2016 WL 4480720, at *8-9 (E.D.N.Y. June 8, 2016); *see also Farzan*, 2013 WL 6231615, at *29 ("The NYCHRL, even with its more liberal standard, still demands reasonableness to substantiate retaliation claims."). Additionally, to ensure that the employer is put on notice of the allegedly unlawful conduct, "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment *due to his membership in a protected class* and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) (emphasis added). In light of that rule, courts have repeatedly held that merely notifying an employer of discriminatory conduct, "without specificity," does not qualify as protected activity. *Dinice-Allen v. Yale-New Haven Hosp.*, No. 3:06-CV-675 (PCD), 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008); *see, e.g.*, *Paul v. Lenox Hill Hosp.*, No. 13-CV-1566 (CBA) (LB), 2016 WL 4775532, at *18 (E.D.N.Y. Jan. 15, 2016) ("[T]he words 'bias' or 'discrimination' alone do not convey any belief that Plaintiff was subjected to discrimination based on her membership in a protected class."), *report and recommendation adopted*, 2016 WL 1271034 (E.D.N.Y. Mar. 29, 2016); *Farzan*, 2013 WL 6231615, at *28 (holding that "no reasonable juror could conclude" that the plaintiff's complaints "constituted opposition to conduct prohibited by discrimination laws" where he merely told the defendant "that he would file a 'discrimination complaint'"); *Ramos v. City of*

*N.Y.*, 96-CV-3787 (DLC), 1997 WL 410493 (S.D.N.Y. July 22, 1997) ("To be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear.").

In this case, Pouncy did "not adequately frame [his] complaint as one challenging *unlawful* or, specifically, race-based discrimination" to qualify it as protected activity. *Paul*, 2016 WL 4775532, at *18. Pouncy provides multiple (and arguably contradictory) accounts of his November 18, 2014 meeting with Biederman (*see* Pl. Tr. 167-69 (testifying that he told Biederman about "the stealing of the money," "about promotions," and that "[t]he only thing I truly remember was [Biederman] pounding on his desk saying I wasn't qualified to do a project directors")), but the closest he comes to saying that he complained about unlawful discrimination is his claim that he accused Biederman of "bias[ed] practices" and told him that he "was going to report [Advanced Focus] to the agencies." (Pl's. SOF ¶¶ 39-40; *see* Pl.'s Mem. 15).[3] There is, in short, no evidence that Pouncy "allude[d] once to race, gender, national origin, religion or any other protected characteristic as playing a role" in Defendants' conduct. *Farzan*, 2013 WL 6231615, at *28. In other words, "even in his *own* account of the conversation," Pouncy "said

---

[3] Pouncy testified that he first complained about "bias," in Advanced Focus's hiring practices, in the beginning of 2012, to Brad Solomon. (Pl. Tr. 54-57). But Pouncy does not allege that he complained about bias *on account of* race or some other protected characteristic. And, in any event, given the passage of time and the fact that Biederman, not Solomon, dismissed Pouncy, Pouncy could not establish the requisite causal connection between his complaint in 2012 and his dismissal in 2014. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (internal quotation marks omitted)); *Kodengada v. IBM Corp.*, 88 F. Supp. 2d 236, 245 (S.D.N.Y. 2000) (finding that an adverse employment action was not retaliatory where it was both "too removed in time from the protected activity" and where the employee was fired "by a different supervisor than the one to whom he had complained"), *aff'd*, 242 F.3d 366 (2d Cir. 2000) (summary order).

nothing beyond this one remark that in context could be 'understood to have been about race' or other protected classifications." *Id.* (emphasis added) (quoting *Lee v. Sony BMG Music Entm't, Inc.,* No. 07-CV-6733 (CM), 2010 WL 743948, at *11 (S.D.N.Y. Mar. 3, 2010)). That does not rise to the level of protected activity under any of the statutes at issue in this case. *See id.* at *28-29; *see also Kelly*, 716 F.3d at 17 (affirming a district court's dismissal of a plaintiff's retaliation claim, even though the plaintiff had used words like "sexual favoritism," "discrimination," and "harassment" in complaining to her employer, because she had given no indication that she "believed that her sex had anything to do with her treatment").

Even if Pouncy had complained to Biederman of racial discrimination, his complaint would not have qualified as "protected activity" for a second, independent reason: Pouncy lacked an objectively reasonable belief that Defendants had engaged in race discrimination. As discussed above in the analysis of the underlying discrimination claims and below in the analysis of the New York Labor Law claims, Pouncy "adduces no evidence to suggest that his membership in a protected group played any role" in Defendants' treatment of him. *Farzan*, 2013 WL 6231615, at *28. In fact, the undisputed evidence reveals that Advanced Focus regularly promoted African-American recruiters to the positions of project director and assistant project director. (*See* Solomon Decl. ¶¶ 10, 11). Indeed, at the time Pouncy left the company, persons of color constituted half of its management. (*Id.* ¶ 2). Where, as here, a plaintiff "presents no other evidence to establish an objective basis for [his] claims, [his] threat to file a discrimination claim [is] unreasonable as a matter of law" and, consequently, "[t]he threat [is] not a protected activity, and [his] retaliation claim must be dismissed." *Sackey v. City of N.Y.,* No. 04-CV-2775 (WHP), 2006 WL 337355, at *10 (S.D.N.Y. Feb.15, 2006), *aff'd,* 293 F. App'x 89 (2d Cir. 2008) (summary order); *accord Orellana*, 2016 WL 4480720, at *9.

**C. Intentional Infliction of Emotional Distress**

Next, Pouncy's Complaint arguably includes a claim, under New York law, for intentional infliction of emotional distress. (Pl.'s Mem. 22-25).[4] A claim for intentional infliction of emotional distress under New York law requires a plaintiff to establish: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). Significantly, "the rigor of the outrageousness standard is well established." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) (alterations omitted). Specifically, the "[c]onduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and recovery is available only "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Id.* (internal quotation marks omitted). In this case, there is no evidence of conduct even remotely meeting that standard. *Cf. Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (N.Y. Sup. Ct. 2000) (holding that the defendant's alleged dumping of a pile of cement, tossing of lighted cigarettes, and drawing of a swastika on his neighbor's house was not sufficiently outrageous to survive a motion for summary judgment); *Leibowitz v. Bank Leumi Tr. Co. of N.Y.*, 548 N.Y.S.2d 513, 521

---

[4] As Pouncy notes (Docket No. 112, at 13), Defendants do not explicitly address Pouncy's intentional infliction of emotional distress claim, perhaps because it is not clearly alleged in the Complaint. Nevertheless, they do seek summary judgment on all of Pouncy's claims. And, in any event, it is well established that where one party moves for summary judgment on a claim, as Pouncy does here with respect to his intentional infliction of emotional distress claim, "a court may grant summary judgment in favor of [the] non-moving party and without notice to the moving party if, first, there are no genuine issues of material fact and the law is on the side of the nonmoving party, and, second, the moving party had an adequate opportunity to come forward with all of its evidence." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 406 (S.D.N.Y. 2015) (internal quotation marks omitted). Those conditions are met here.

(N.Y. Sup. Ct. 1989) (holding that allegations of repeated derogatory, racist remarks were insufficient to establish a claim). Pouncy's intentional infliction of emotional distress claim rests on the same allegations that support his other claims — for example, that Defendants gamed the timing of his commission payments, created a hostile work environment, and retaliated against him — and his conclusory assertion that, as a result of those actions, he suffered mental anguish. (Pl.'s Mem. 23-24). But even if there were evidence to substantiated all of those allegations — and there is not, as discussed elsewhere in this Opinion and Order — Pouncy would still not meet the rigorous standards for an intentional infliction of emotional distress claim. Thus, Pouncy's claim emotional distress claim must be and is dismissed.

**D. New York Labor Law**

Finally, Pouncy claims that Advanced Focus violated Section 191 of the New York Labor Law in the manner in which it calculated his commissions.[5] Section 191 requires that "[a] commission salesperson shall be paid the wages . . . [and] commissions . . . in accordance with the agreed terms of employment." N.Y. Lab. Law. § 191(1)(c); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010) ("[Section 191] by its terms only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a *particular* wage."). In this case, Pouncy argues that Defendants improperly calculated his

---

[5] Although Pouncy's Complaint includes a claim under Section 190 of the New York Labor Law (*see* Pl.'s Mem. 19), Defendants argue — and Pouncy does not seem to contest — that that Section is a definitional provision that does not create a cause of action. (Defs.' Mem. 22). The Court agrees. *See Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14-CV-9539 (LGS), 2015 WL 4554252, at *5 (S.D.N.Y. July 29, 2015) ("NYLL ¶ 190 is merely a 'definition section' and does not create a cause of action."). Accordingly, Pouncy's seventh cause of action is dismissed.

paycheck by recording commissions earned in one pay period in a later pay period. In particular, Pouncy contends that he earned a $477.50 commission during the October 16-31, 2014 pay period, but that the commission was reflected on his paycheck for the following pay period. (Pl.'s Mem. 21-22). As a result, Pouncy was paid $820.00 for the October period and $607.50 for the November period. (Solomon Decl. Exs. A, B). Because Defendants calculated his wages based on the higher of either the hourly wage or commissions (*see* Solomon Decl. ¶¶ 4, 6), Pouncy contends that he is owed $416.53, because his October and November paychecks should have been $1297.50 and $546.53, respectively. (Pl.'s SOF ¶ 56). By contrast, Defendants contend that Advanced Focus "transmits the payroll information to its payroll vendor a few days prior to the scheduled pay date" and that, while Pouncy earned his $477.50 commission on October 29, 2014, it was properly reflected on his November 15, 2014 paycheck. (Defs.' Mem. 23). That is, Defendants argue that Pouncy's October 31, 2014 paycheck reflects "the work weeks of October 13 to October 19 and October 20 to October 26," while Pouncy's November 15, 2014 paycheck covers "the work weeks October 27 to November 2 and November 3 to November 10." (*Id.*).

     Defendants' description of the facts is accurate and makes plain that Pouncy was paid in accordance with the "agreed terms of employment," as Section 191 requires. N.Y. Lab. Law. § 191(1)(c). The Advanced Focus employment agreement, which Pouncy signed, provided that paydays were "on the 15th & 30th of every month" and that, "[f]or hourly employees," such as Pouncy, "pay periods include[d] the two closest full weeks worked" — defined as "midnight on Saturday" to "11:59 p.m. on the following Saturday" — "prior to payday." (Pl. Tr. Ex. F at 11, 36). Defendants complied with those requirements when it registered Pouncy's $477.50 commission from October 29, 2014, on his November 15, 2014 paycheck. (*Id.*) That is,

19

Pouncy's paycheck dated October 31, 2014, properly accounted for the October 13-19 and October 20-26 work weeks.  Likewise, Pouncy's paycheck dated November 15, 2014, properly accounted for the October 27 to November 2 and November 3-10 work weeks.  Because the admissible evidence demonstrates that Defendants paid Pouncy in accordance with the agreed terms of employment, no reasonable jury could find for Pouncy on his Section 191 claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in its entirety, and all of Pouncy's claims are dismissed.  It follows that Pouncy's cross-motion for summary judgment must be and is denied.  This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied to Pouncy.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket Nos. 78, 92, and 99, to close this case, and to mail a copy of this Opinion and Order to Pouncy.

SO ORDERED.

Date: September 25, 2017
New York, New York

JESSE M. FURMAN
United States District Judge